Judge Barbara J. Rothstein
Trial Date: January 8, 2024
*Without Oral Argument*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHANDRASI GAEKWAR, a single individual,

Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY, a foreign corporation,

Defendant.

No. 2:22-cv-1551-BJR

**GEICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXTRACONTRACTUAL CLAIMS**

**COMES NOW** the above-named Defendant, Amica Mutual Insurance Company ("Defendant Amica"), by and through its Attorneys of Record WATHEN | LEID | HALL | RIDER, P.C., and presents this Motion for Partial Summary Judgment dismissing Extracontractual Claims with prejudice.

## I. RELIEF REQUESTED

Amica respectfully seeks an order dismissing Mr. Gaekwar's extracontractual claims with prejudice. Amica promptly and reasonably investigated the loss and paid Mr. Gaekwar Personal Injury Protection and UMPD benefits under his policy. Amica reasonably communicated with Mr. Gaekwar and Mr. Gaekwar's counsel to evaluate and work toward a



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

resolution of Mr. Gaekwar's UIM claim. Amica's determination of UIM damages was based on prompt and reasonable investigation and evaluation of the available information in the claim file as well as the adjuster's experience.

Dissatisfied with Amica's valuation of his UIM claim, Plaintiff filed suit against Amica on October 7, 2022. Mr. Gaekwar has not sustained any damages related to the alleged extracontractual claims or conduct. Accordingly, summary judgment dismissal of Mr. Gaekwar's bad faith and extracontractual claims is warranted and proper.

## II. OVERVIEW

This matter arises from a motor vehicle collision that occurred on January 25, 2020, involving Plaintiff, Chandrasi Gaekwar, and non-party Edgar Garcia.[1] Following the loss, Mr. Gaekwar submitted claims under his Amica Policy.[2] The policy provides $10,000.00 in Personal Injury Protection (PIP) benefits for medical expenses. The policy further provides underinsured motorists insurance in the amount of $300,000.00 per person. At no point did Amica deny coverage under this policy, and at no point did Amica deny Mr. Gaekwar's claims. In fact, Amica did pay the PIP limits of $10,000.00 and for repairs to his vehicle.

## III. STATEMENT OF FACTS

### A. Background

On January 25, 2020, Mr. Gaekwar was driving the 2015 Toyota Highlander southbound on 5th Ave. W when another vehicle collided with him from behind.[3] As a result of the collision, Mr. Gaekwar's vehicle sustained damage.[4]

Edgard Campos Garcia was driving a 2012 Toyota Camry that collided with Mr.

---

[1] *See,* Declaration of Isabella M. Foxen (herein after "Foxen Decl.") at **Ex. A** (Police Report)
[2] *See,* Foxen Decl., **Ex. B** (Amica Policy No. 90054621TQ)
[3] *See*, Foxen Decl., **Ex. A**.
[4] *Id*.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Gaekwar's vehicle.[5] Police responded to the incident and completed a report detailing the damage and description of the accident.[6] The report indicates that Mr. Garcia was travelling too close to Mr. Gaekwar.[7] Officers provided a description of where the accident took place – in the 8400 block of 5th Ave W in the forward-travel lane.[8] Mr. Gaekwar was making a right-turn at the time of the incident.[9] Both vehicles sustained damage.[10] The damage to Mr. Gaekwar's vehicle included damage to the bumper and rear liftgate.[11] There was no emergency medical aid on scene and no independent witnesses.[12]

At the time of the incident, Mr. Garcia, had a $50,000.00 liability policy through Nationwide Insurance. Nationwide accepted fault and tendered policy limits.[13]

Two days after the incident, on January 27, 2020, Mr. Gaekwar sought treatment at Overlake Medical Clinic.[14] Mr. Gaekwar complained of left knee pain, lower back pain, and right neck pain.[15] On January 31, 2020, Mr. Gaekwar underwent imaging on his knee.[16] The imaging notes moderate to advanced tri-compartmental osteoarthritis and diffuse demineralization of the knee.[17] These findings were not compared to other imaging pre-collision at that time.

On February 3, 2020, Mr. Gaekwar was referred to physical therapy. On February 4,

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *See*, Foxen Decl. **Ex. O** (Meridian Repair Estimate)
[12] *See,* Foxen Decl. **Ex. A**.
[13] *See*, Foxen Decl. **Ex. C** (Plaintiff's Demand Letter)
[14] *See*, Foxen Decl., **Ex. F** (Overlake Medical Records) at page 26, PDF pages 7-9.
[15] *Id.*
[16] *Id.* at page 28.
[17] *Id.* at page 30.



WATHEN | LEID | HALL | RIDER, P.C.
222 Etruria Street
Seattle, Washington 98109-1659
(206) 622-0494/Fax (206) 587-2476

2020, Mr. Gaekwar began physical therapy with Innova Physical Therapy.[18] The treatment plan consisted of eight weeks of physical therapy twice a week. However, Mr. Gaekwar ultimately attended 61 physical therapy sessions through September of 2020.[19] Mr. Gaekwar was eventually discharged from physical therapy with at-home exercises to manage any ongoing knee pain.

Amica does not dispute that Mr. Gaekwar sustained injuries in the incident and that Mr. Gaekwar underwent necessary care for accident-related injuries. Amica has accepted all medical records and injuries related to the incident. However, Amica specifically disputes that Mr. Gaekwar's knee surgery is accident related. Amica has based its dispute on the medical records provided by Mr. Gaekwar, including records from Mr. Gaekwar's long-time orthopedic surgeon, Dr. Robert T. Goldman. [2021]

Prior to the accident at issue, Mr. Gaekwar had been seeing Dr. Robert T. Goldman for his knee issues since 2014.[22] Mr. Gaekwar had "pre-existing degenerative changed in his left knee, which included: osteoarthritis, subchondral sclerosis, joint space narrowing, cystic degeneration and osteophyte formation."[23] Mr. Gaekwar received Synvisc injections in both his knees and received physical therapy through May 2017.[24] Mr. Gaekwar underwent a right knee replacement on May 30, 2018.[25] Mr. Gaekwar's clinical notes at Overlake Medical Center from December 13, 2018, indicate that Mr. Gaekwar, "will be going to New Jersey next year to have

---

[18] *See*, Foxen Decl., **Ex. N** (Innova Physical Therapy Billing and Records)
[19] *Id.*at pg. 1-4.
[20] *See*, **Ex. D** (Curriculum Vitae of Dr. Robert T. Goldman)
[21] *See*, **Ex. E** (Declaration of Dr. Robert T. Goldman)
[22]*Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

a left knee replacement."[26]

Dr. Goldman provided in his clinic notes that Mr. Gaekwar, "was planning to have a knee replacement done a year and a half ago, but it was canceled due to the COVID pandemic, and he comes now for reevaluation."[27] Mr. Gaekwar had knee surgery on December 13, 2021.[28] Mr. Gaekwar's medical records indicate that his knee surgery was elective due to his pre-existing tricompartmental osteoarthritis and that Mr. Gaekwar had already considered surgery before the incident occurred.

**B. Amica's Prompt and Reasonable Investigation and Payment**

Amica promptly opened a claim for Mr. Gaekwar on January 27, 2020, two days after the incident.[29] On February 3, 2020, Amica mailed Mr. Gaekwar an application for PIP benefits with additional information about submitting bills for payment.[30] Amica remained in regular contact with Mr. Gaekwar and his counsel.[31] Mr. Gaekwar's medical bills were paid as received through May 21, 2020.[32] Amica reviewed all documents received from Plaintiff's counsel, including extensive medical records from before and after the incident.[33] Amica relied upon the medical documents provided by Plaintiff's counsel when making the coverage determination. Amica never disputed that Mr. Gaekwar sustained injuries in the incident. As such, the Personal Injury Protection Coverage limits of $10,000.00 were paid to Mr. Gaekwar. Additionally, Mr. Gaekwar was promptly reimbursed for his out-of-pocket vehicle repairs.[34]

Amica has accepted all of Mr. Gaekwar's injuries and damages, except his knee surgery.

---

[26] *See*, Foxen Decl., **Ex. F** (Overlake Medical Records) at page 25, PDF pages 7-9.
[27] *See,* Foxen Decl., **Ex. G** (Tri-County Medical Records) at page 1.
[28] *Id.*
[29] *See,* Foxen Decl., **Ex. H** (Claim Notes) at AMICA 003006.
[30] *See*, Foxen Decl., **Ex. I** (PIP Letter)
[31] *See,* Foxen Decl., **Ex. H** at AMICA 003005 – 002949.
[32] *See*, Foxen Decl., **Ex. K** (PIP Ledger)
[33] *See*, Foxen Decl. **Ex. H**. at AMICA 002958, AMICA 002960 – 002961, AMICA 002963 – 002964.
[34] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Mr. Gaekwar's own medical records provide that before the incident Mr. Gaekwar had an extensive history of knee problems, had already undergone right knee surgery, and had been contemplating left knee surgery.[35] Additionally, Amica retained a medical expert, Dr. Kearney, to review Mr. Gaekwar's medical records.[36] Dr. Kearney ultimately determined that Mr. Gaekwar's knee surgery was not related to the incident. Amica relied upon Mr. Gaekwar's medical records and the opinion of Dr. Kearney in valuing Mr. Gaekwar's claim. As a matter of law, Amica's thorough investigation can never be considered frivolous or unfounded.

**C. UIM Claims Handling**

Amica has never disputed that Mr. Gaekwar sustained injuries in the incident. Amica has determined, upon material review of Mr. Gaekwar's own medical records and expert analysis of the medical records, that Mr. Gaekwar's claims regarding his knee surgery are ultimately unsubstantiated.

Amica's thorough review of Mr. Gaekwar's claim began on January 27, 2020, when a claim was opened for Mr. Gaekwar. Mr. Gaekwar's initial demand letter was sent on February 9, 2021. Mr. Gaekwar's demand letter requested $140,000.00 to resolve the claim.[37] At the time, Mr. Gaekwar's total medical specials were $20,925.38.[38] Additionally, $60,000.00 had already been paid to Mr. Gaekwar through Nationwide Insurance and Amica PIP coverage for his injuries sustained in the incident.[39] On March 4, 2021, after careful consideration of the demand letter, Plaintiff's own medical records, and coverage previously paid to Mr. Gaekwar,

[35] *See*, Foxen Decl., **Ex. E, Ex. F,** and **Ex. G**.
[36] *See*, Foxen Decl., **Ex. M.** (Dr. Kearney's Medical Record Review)
[37] *See*, Foxen Decl., **Ex. C**
[38] *Id*.
[39] *Id* and **Ex. J**.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Amica responded to the demand letter.[40]

Amica's evaluated the information and materials made available to Amica during the adjustment period of Mr. Gaekwar's claim which led Amica adjusters to value Mr. Gaekwar's claim at $61,000.00 on March 4, 2021.[41]Amica responded timely to the demand with a $1,000.00 new money offer. Amica did not dispute that Mr. Gaekwar sustained injuries in the incident. However, based upon the medical records, Amica disputed that Mr. Gaekwar's medical surgery was related to the incident and was instead related to his pre-existing knee condition. Amica continued to contact Plaintiff to attempt to gather additional information regarding Plaintiff's proposed knee surgery.

Amica has accepted all injuries Mr. Gaekwar sustained related to the incident, including the minor forehead laceration, back pain, neck pain, and some knee pain. Mr. Gaekwar was compensated for all his accident-related injuries through Nationwide.[42] However, the issue presently is whether the knee surgery is medically related to the motor vehicle accident when Mr. Gaekwar had already been considering left knee surgery just months before the accident.

Due to the disagreement in medical causation, Amica retained an expert for MRR to review Plaintiff's medical records and determine whether Mr. Gaekwar's knee surgery was indeed related to the incident or if it was related to Plaintiff's pre-existing knee condition.[43] The expert investigation ultimately determined that Mr. Gaekwar's knee surgery was unrelated to the incident.[44] Furthermore, Plaintiff's medical records provided that Plaintiff had previously been considering left knee surgery before the incident occurred.[45] As such, Plaintiff's claim that

---

[40] *See,* Foxen Decl., **Ex. J** (Demand Response)
[41] *See,* Foxen Decl., **Ex. J** (Demand Response)
[42] *See,* Foxen Decl., **Ex. J**
[43] *See*, Foxen Decl., **Ex. M.**
[44] *Id.*
[45] *See*, Foxen Decl., **Ex. F** at page 25 PDF pages 7-9.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

he was pain-free before the incident is ultimately irrelevant since Plaintiff was already considering undergoing left knee surgery despite alleged lack of pain.

As a matter of law, Amica has completed a full and extensive evaluation of Plaintiff's claim which included a full evaluation of all documents provided from Plaintiff's counsel, an investigation into Plaintiff's pre-existing conditions, consistent contact with Plaintiff's counsel, and review of expert MRR.[46] Amica performed a prompt and reasonable investigation into Mr. Gaekwar's claims and fairly evaluated that Mr. Gaekwar's pre-existing knee condition was not related to the incident.

1. Dr. Kearney – Orthopedic Surgeon

As part of the investigative process, Amica retained Dr. Kearney to review Mr. Gaekwar's submitted medical records.[47] Dr. Kearney's report provided Mr. Gaekwar had:

> pre-existing moderate-to-severe left knee tricompartmental osteoarthritis with associated varus malalignment prior to the motor vehicle accident of January 25, 2020. This diagnosis was neither caused by nor permanently aggravated by the motor vehicle accident. The natural history of this condition is that symptoms will arise and will continue to worsen over time. It is the examiner's opinion that these symptoms would have arisen regardless of the motor vehicle accident of January 25, 2020.[48]

Additionally, Dr. Kearney provided that "any treatment beyond May 21, 2020, would be considered unrelated to the motor vehicle accident… It would be considered related to the pre-existing left knee tricompartmental osteoarthritis."[49] Dr. Kearney's opinion was that "no further medical care would be considered reasonable, medically necessary, and related to the injury of

---

[46] *See generally* Foxen Decl., **Ex. H.**
[47] *See*, Foxen Decl., **Ex. M.**
[48] *Id.* at page 8.
[49] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

January 25, 2020."[50] Dr. Kearney determined that Mr. Gaekwar had reached pre-accident status.[51] Amica relied, in part, upon Dr. Kearney's expert report and maintained that Mr. Gaekwar's knee surgery was unrelated to the incident.

2. Dr. Goldman – Orthopedic Surgeon

As provided above, Dr. Goldman has been treating Mr. Gaekwar since 2014.[52] Dr. Goldman was Mr. Gaekwar's surgeon and medical records were received on June 30, 2022. Dr. Goldman had previously recommended knee surgery for Mr. Gaekwar and Mr. Gaekwar had undergone right knee surgery in 2018.[53] Dr. Goldman's signed medical records provide that Mr. Gaekwar has been contemplating left knee surgery since 2018 and most recently, a year and a half before the incident.[54] Amica relied upon Mr. Gaekwar's medical records, written by Dr. Goldman and Dr. Kriseman, when evaluating Mr. Gaekwar's claim.

3. Amica's Reasonable and Evidence-Based Settlement Offer

At the time of Mr. Gaekwar's first demand letter, Mr. Gaekwar had already been compensated by Nationwide with $50,000.00 for his injuries related to the accident.[55] On December 6, 2021, after Plaintiff's rejection of Amica's initial settlement offer, Amica increased the settlement offer to $5,000.00 and noted that Mr. Gaekwar has already received $60,000.00 in total compensation.[56] Mr. Gaekwar's $10,000.00 PIP limits had been exhausted and subrogation was waived.[57] Furthermore, Mr. Gaekwar's medical specials, prior to his left

---

[50] *Id.* at page 9.
[51] *Id.* at page 11.
[52] *See*, **Ex. E**.
[53] *Id.*
[54] *See*, Foxen Decl., **Ex. F** at page 25 PDF pages 7-9. and **Ex. G** at page 1.
[55] *See,* Foxen Decl. **Ex. C**.
[56] *Id.* at page 53 and 54.
[57] *See*, Foxen Decl., **Ex. J**.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

knee replacement, only amounted to $20,925.38.[58]

The current issue is related to medical causation: is Mr. Gaekwar's left knee surgery related to his existing left knee tricompartmental osteoarthritis or is it related to the motor vehicle accident?

Amica does not dispute that Mr. Gaekwar sustained injuries in the incident. Amica's evaluation of Mr. Gaekwar's claims was not frivolous or unfounded. Amica's valuation of Mr. Gaekwar's claim included that Mr. Gaekwar had already received compensation for his injuries, Dr. Kearney's MRR, Dr. Goldman's signed records, and all documents received from the Plaintiff.

Amica thoroughly reviewed Mr. Gaekwar's medical records which provided that Mr. Gaekwar had pre-existing left knee tricompartmental osteoarthritis.[59] Additionally, Mr. Gaekwar had already undergone a right knee replacement in 2018 and had considered a left knee replacement in 2019 and more recently had planned a left knee replacement but canceled due to the Covid-19 pandemic.[60] Plaintiff now argues that his ongoing knee issues and pre-planned replacement were related to the incident, a claim Amica disputes. Dissatisfied with the valuation of his claim, Mr. Gaekwar then filed the Complaint on October 6, 2022. [61]

## IV. STATEMENT OF ISSUES

1. **Whether Amica is entitled to summary judgment of Plaintiff Gaekwar's bad faith and extracontractual claims where Amica considered all materials submitted in support of Mr. Gaekwar's claim and reasonably and timely made an offer to resolve the UIM claim?**

**ANSWER: YES**

---

[58] *Id.*
[59] *See*, Foxen Decl., **Ex. M** at page 8.
[60] *See*, Foxen Decl., **Ex. F** at page 25 PDF pages 7-9, and **Ex. G** at page 1.
[61] *See*, Foxen Decl., **Ex. L** (Complaint)



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

## V. EVIDENCE RELIED UPON

1. Declaration of Isabella M. Foxen, with exhibits attached thereto; and
2. The pleadings and filing in this matter.

## VI. LEGAL ARGUMENT

### A. Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party that brings a motion for summary judgment bears the burden of establishing the absence of an issue of material fact. *Id*. Once the moving party has made the requisite showing the non-moving party bears the burden of establishing that there is a question of fact pertinent to an essential element of his case. *Id*. Summary judgment should be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. Here, there are no facts in dispute regarding the issues presented in this motion, and the Court can properly rule on this motion as a matter of law.

### B. The Holding of Perez-Crisantos Requires All of Plaintiff's Extracontractual Claims to Be Dismissed as a Matter of Law

There is a reasonable dispute about the value of Mr. Gaekwar's claim such that all of Plaintiff's extracontractual claims should be dismissed under current Washington Law. *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 389 P.3d 476 (2017). In *Perez-Crisantos*, the Washington Supreme Court held that a claim cannot be brought under IFCA based on claims handling, unless there has been an actual denial of coverage. *Id.* Where the basis for the extracontractual claims was a reasonable value dispute, the Supreme Court upheld dismissal of those claims by summary judgment. *Id.* The Court followed that it "strongly



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

suggests that IFCA was not meant to create a cause of action for regulatory violations." *Id.* However, the Court found that both the legislative intent and the canons of statutory construction support the interpretation that the IFCA does not create a cause of action for regulatory violations alone. *Id.* at 681, 683.

Factually, *Perez-Christos* was summarily dismissed on facts very similar to the case at hand. In *Perez-Christos,* the insurer paid PIP benefits, but disagreed with the insured as to the value of his claim. *Id.* at 685. Ultimately, the insured was successful at arbitration and was awarded $24,000. *Id.* at 673. The trial Court held that State Farm's offers to settle for less than what was ultimately awarded at arbitration were State Farm asserting that the insured had been compensated for his injuries from other coverage. *Id.* at 675. The trial Court granted summary judgment on all the insured's extracontractual claims, and that grant was upheld by the Supreme Court. *Id. at 686.*

Amica has never denied coverage. In fact, Amica has made several offers to pay Mr. Gaekwar for his claimed damages and close his claim. Like State Farm in *Perez,* Amica paid PIP benefits and has never rejected Mr. Gaekwar's claim. The controversy at hand arises from the disagreement between Mr. Gaekwar and Amica about the value of Mr. Gaekwar's UIM claim, not whether there was a reasonable denial. Since there was no denial, Mr. Gaekwar has not, and cannot, present any evidence or facts sufficient to bring a private cause of action for extracontractual claims under Washington law. *Perez*, 187 Wn.2d at 686. Therefore, the Court should determine, as a matter of law, that Mr. Gaekwar's claim has not been denied and dismiss his IFCA claim.

**C. IFCA Requires Denial**

Since there has been no actual denial of coverage, Mr. Gaekwar's IFCA claims must be



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

dismissed as a matter of law under *Perez-Cristanos*. *See, Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 389 P.3d 476 (2017). Washington courts have held, under *Perez-Crisantos*, that a claim cannot be brought under IFCA based on claims handling, unless there has been an actual denial of coverage. *Id.* IFCA does not create a cause of action for regulatory violations alone. *Id.* at 681, 683.

Here there has been no denial of coverage for Mr. Gaekwar. Amica has made several offers to pay Mr. Gaekwar for his claimed injuries. Like State Farm in *Perez*, Amica has paid PIP benefits and has never rejected Mr. Gaekwar's claim. The controversy at hand arises from a valuation dispute about the value of Mr. Gaekwar's UIM claim. Washington courts have held, under *Perez*, that a valuation dispute is not a denial of coverage and therefore does not amount to an IFCA violation.

IFCA provides a cause of action to a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer…" *See* RCW 48.30.015(1). However, as explained by the court in *MK Lim, Inc. v. Greenwich Ins.* Co., 2011 U.S. Dist. LEXIS 126395 (2011) there must be an unreasonable denial of coverage:

> … However, a violation of one of the enumerated WAC provisions alone is not sufficient to sustain a cause of action under IFCA. There must be an unreasonable denial of coverage or payment. … As the court in *Lease Crutcher* noted, '[a] violation of WAC 284-30-030 may justify the imposition of treble damages under RCW 48.30.015(2) and/or an award of fees and costs under RCW 48.30.015(3), but an underlying denial of coverage is still required.'…

*See MK Lim, Inc. v. Greenwich Ins.* Co., 2011 U.S. Dist. LEXIS 126395 at 6-7 (2011) (internal citations omitted); *see also*, *Travelers Indem. Co. v. Bronsink*, No.C08-1524JLR, 2010 U.S. Dist. LEXIS 2118, 2010 WL 148366, at *2 (W.D. Wash. Jan 12, 2010); *see also Lease Crutcher Lewis WA, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. C08-1862RSL,



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

2010 U.S. Dist. LEXIS 110866, 2010 WL 4272453, at *5 (W.D. Wash. Oct. 15, 2010); *Weinstein & Riley, P.S. v. Westport Ins. Corp.,* No C08-1694JLR, 2011 U.S. Dist. LEXIS 26369, 2011 WL 887552, at *30 (W.D. Wash. Mar. 14, 2011). Once more, where there was no denial in coverage, as is the case here, there is no cause of action under IFCA.

In *Smith v. State Farm Mut. Auto. Ins. Co., 2013 U.S. Dist. LEXIS 205447, *6-7*, the Court found that, "the federal district courts in Washington have, on multiple occasions, held that an IFCA cause of action does not exist absent an unreasonable denial of coverage or payment of benefits, even if an insurer's conduct is otherwise unreasonable." *Id.* (citing, *Neyens v. Am. Fam. Mut. Ins. Co.*, No. C12-1038-JLR, 2012 U.S. Dist. LEXIS 162201, 2012 WL 5499870, at *3 (W.D. Wash. Nov. 13, 2012) ("By its clear terms, IFCA only creates a cause of action for claimants who are 'unreasonably denied a claim for coverage or payment'"); *Country Preferred Ins. Co. v. Hurless*, No. C11-1349-RSM, 2012 U.S. Dist. LEXIS 134201, 2012 WL 4127727, at *1 (W.D. Wash. Sept. 19, 2012) (IFCA claim requires denial of a claim for coverage or benefits rather than a dispute over valuation that is subsequently resolved); *Cardenas v. Navigators Ins. Co.*, No. C11-5578-RJB, 2011 U.S. Dist. LEXIS 145194, 2011 WL 6300253, at * 6 (W.D. Wash. Dec. 16, 2011) ("Although violations of the enumerated regulations provide grounds for trebling damages or for an award of attorney's fees; they do not, on their own, provide a [*sic*] IFCA cause of action absent an unreasonable denial of coverage or payment of benefits").

Mr. Gaekwar's IFCA claim fails to meet the core statutory requirements. Amica has <u>never</u> denied coverage to Mr. Gaekwar. Accordingly, Mr. Gaekwar has not met the first element of an IFCA claim – an unreasonable denial – Mr. Gaekwar's IFCA claim should be dismissed.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

**D. Amica Reasonably Investigated Mr. Gaekwar's Claim and Amica Did Not Deny Payment of Benefits**

There has been no breach of contract. In arguendo, even if there was a breach of contract, a bad faith claim requires more than just a mere breach of contract. Rather, "a bad faith claim also depends on proof that the breach . . . was unreasonable, frivolous and unfounded." *Baldwin v. Silver*, 165 Wn. App. 463, 473, 269 P.3d 284, 289 (2011) (internal citations omitted). Where a defendant is an insurer, it is not bad faith if a denial or limitation of coverage is based on a genuine dispute with the insured. *Guebara v. Allstate Ins., Co.*, 237 F.3d 987, 996 (9th Cir. 2001). The insurer's reliance on an expert is an indication that the insurer acted reasonably. *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F.Supp.2d 1101, 1126 (E.D. Cal. 2011); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th Cir. 2001). Furthermore, in *GCG Assocs. LP v. Am. Cas. Co. of Reading Pennsylvania*, 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008) summary judgment was granted, and the court found the insurer is required to investigate claims in a reasonable manner before determining coverage, but is not required to undertake the most extensive investigation possible.

In a UIM claim, the adjuster's task of evaluation is necessarily a speculative undertaking and bodily injury damage valuations are, therefore, necessarily afforded a broad range of latitude as observed by the Washington Supreme Court in the *Dayton* case (a UIM claim):

> Compensatory damages awards are highly individual, and depend on the facts of the particular case. We have no precise valuation formula with which to calculate awards (internal citation omitted) This is particularly true in personal injury recoveries. Even in cases where the facts appear similar, juries vary greatly in their estimates of what constitutes adequate compensation for certain types of pain and suffering.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

*See Dayton v. Farmers Ins. Group*, 124 Wn. 2d 277, 876 P.2d 896 (1994). The evaluation and review performed by Amica was reasonable and based upon the MRR that Amica sought, review of the entire claims file, and information provided by Plaintiff through continued contact.

Where insureds have alleged a dispute in valuation compelled litigation, Washington courts have routinely dismissed extracontractual claims where the valuation was reasonable or where there was no denial. In *Perez*, a suit was filed alleging violations of IFCA, CPA, bad faith, and negligence. The Court noted that the Plaintiff's main argument was that State Farm compelled him to litigate his UIM claim through "a pre-suit offer of $0", which, he contended "violated insurance regulations that deem it unfair or deceptive to '[c]ompel [] a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts recovered in such actions or proceedings.'" *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 678, 389 P.3d 476 (2017); WAC 284-30-330(7). Ultimately, the Washington Supreme Court held that a claim cannot be brought under IFCA based on claims handling unless there has been an actual denial of coverage. *Id.* Moreover, the Court held summary judgment was appropriately granted because Perez-Crisantos failed to show a genuine issue that State Farm acted unreasonably. *Id.* at 685.

Amica's evaluation of the information and materials made available to Amica during the adjustment period of Mr. Gaekwar's claim led Amica adjusters to value Mr. Gaekwar's claim at $1,000.00 on March 4, 2021.[62] Amica's duty to Mr. Gaekwar was to evaluate the information that was made available. Amica complied with this duty, a fact that Mr. Gaekwar has not, and cannot, refute. Furthermore, Amica had already paid the $10,000.00 PIP limits to

[62] *See,* Foxen Decl., **Ex. J**



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Mr. Gaekwar and waived the subrogation – effectively paying $10,000.00.[63]

An insurer violates IFCA when it "unreasonably denies[s] a claim for coverage or payment of benefits[.]" RCW 48.30.015(1). It is not a violation of IFCA if insurer "reasonably disputed the amount" of a claim, rather than denying payment. *See, Country Preferred Ins. Co. v. Hurless*, 2012 U.S.Dist. 86334 at *17 (W.D. Wash. 2012). Amica has reasonably investigated Mr. Gaekwar's claim since its conception. The investigation is reasonable in light of Mr. Gaekwar's prior knee issues, and Amica's valuation of the claim was based on expert review of the documents provided by Mr. Gaekwar. No reasonable juror would find that Amica's undisputed conduct was in violation of IFCA, and therefore, Mr. Gaekwar's IFCA claim should be dismissed.

**E. Amica Acted in Good Faith**

An insurer has a duty of good faith to its policyholder, and violation of that duty may give rise to a tort action for bad faith. *Am. States Ins. Co. v. Symes of Silverdale, Inc.,* 150 Wn.2d 462, 470, 78 P.3d 1266 (2003); *Truck Ins. Exch. v. Vanport Homes*, Inc., 147 Wn.2d 751, 765, 58 P.3d 276 (2002); RCW 48.01.030.7.

The Washington Supreme Court ruled that the elements for a cause of action of bad faith by an insurer are as follows:

> Claims by the insured against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty. As a substantive matter, an insurer has a duty of good faith to all of its policyholders, and to succeed on a bad faith claim, a policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded.

*See Smith v. SAFECO Insurance Company*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003).

To establish bad faith, the insured must show that the insurer's actions were

[63] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

unreasonable, frivolous or unfounded. *Smith v. SAFECO Insurance Company*, 150 Wn.2d 478, 78 P.3d 1274 (2003); *American States v. Symes of Silverdale*, 150 Wn.2d 462, 78 P.3d 1266 (2003); *Overton v. Consol. Ins. Co.,* 145 Wn.2d 417, 433, 38 P.3d 322 (2002); *Kirk v. Mt. Airy Insurance Co.*, 134 Wn.2d 558, 951 P.2d 1124 (1998). Here, Mr. Gaekwar has failed to articulate any specific action that was unreasonable that goes beyond a dispute over value.

The Washington State Supreme Court has held that an insured has a heavy burden in proving that an insurer acted in bad faith. In *Smith*, the Supreme Court stated the following:

> If an insured claims that the insurer denied coverage unreasonably in bad faith then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof.

*Smith v. SAFECO Insurance Company*, 150 Wn.2d at 486.

Whether an insurer acted in bad faith is a question of fact. *Am. States Ins. Co. v. Symes of Silverdale, Inc.,* 150 Wn.2d 462, 470, 78 P.3d 1266 (2003) (citing, *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 796, 16 P.3d 574 (2001)). Accordingly, "an insurer is entitled to a directed verdict or a dismissal on summary judgment of the policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances and the insurer is entitled to prevail as a matter of law." *Am. States Ins. Co. v. Symes of Silverdale, Inc.,* 150 Wn.2d at 470 citing *Indus. Indem. of the N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 920, 792 P.2d 520 (1990). In other words, the insurer is entitled to summary judgment if reasonable minds could not differ that the insurer's investigation was reasonable. *Smith v. SAFECO Insurance Company*, 150 Wn.2d at 486.

Here, there was no coverage denial. Amica promptly investigated the loss and never denied Mr. Gaekwar's claim. Amica was in constant contact with Mr. Gaekwar. Mr. Gaekwar's



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

medical bills were paid as received through May 21, 2020.[64] His vehicle repair claim was also paid without delay once the vehicle was brought to a shop.[65] At all times material hereto, Amica conducted its investigation of Mr. Gaekwar's claims in good faith and as required under the terms of the subject policy. At all times material hereto, Amica's actions were in compliance with the terms of the policy and statutory authority.

### F. Mr. Gaekwar Has Not Alleged Injury to His Business or Property to Support His CPA Claim

To maintain an action for a private Consumer Protection Act (CPA) violation, the Plaintiff must prove (1) an unfair or deceptive act or practice, (2) in the conduct of trade or commerce, (3) which impacts the public interest, (4) injury to the plaintiff in their business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Mr. Gaekwar has failed to allege clearly, much less prove, the fourth and fifth elements which are required to bring a CPA claim.

Mr. Gaekwar's extracontractual claims require damages to be proximately caused by the action or inaction of Amica. "An insurer is liable for those damages proximately caused by its IFCA violations." *See W. Beach Condo. v. Commonwealth Ins. Co. of Am*., 11 Wn. App. 2d 791, 455 P.3d 1193 (2020) (citing *Dees v. Allstate Ins. Co*., 933 F. Supp. 2d 1299, 1312 (W.D. Wash. 2013). Similarly, in every bad faith action, the insured must establish that it was harmed by the insurer's bad faith acts. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992) (quoting *Smith v. Safeco Ins. Co.,* 150 Wash.2d 478, 485, 78 P.3d 1274 (2003)).

At issue is whether Mr. Gaekwar suffered any injury to his business or property. While "the injury need not be great, it must be established." *Mason v. Mortgage America*, Inc., 114

---

[64] *See,* Foxen Decl., **Ex. K** (PIP Ledger)
[65] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Wn.2d 842, 854, 792 P.2d 142 (1990). Monetary damages are not necessary, "nonquantifiable injuries, such as loss of goodwill" suffice. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987) (injury to reputation and goodwill sufficient); *Mason*, 114 Wn.2d at 855 (temporary loss of title to property is an "injury to property"). There is no evidence of a particular act or practice that has damaged Mr. Gaekwar. Rather, any claimed damages result from the parties' value dispute.

Mr. Gaekwar has not alleged any injuries he has sustained resulting from Amica's claims handling. "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009). "Thus, damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Id.* In *Panang,* the plaintiff specifically alleged that she incurred expenses in the investigation of an alleged deceptive collections notice. *Id.* At 62. The deceptive practice at the heart of Panang's claim was sending the collections notices. *Id.* Because of the investigation resulting from the collections notice, Panang incurred costs separate and distinct from bringing a CPA claim. In Mr. Gaekwar's case, there are no investigative damages that Mr. Gaekwar could attribute to any of Amica's claim handling. Under Washington law, claims of inconvenience and expense of prosecuting a CPA claim do not support a claim for injury to business or property. *See e.g., Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563-64, 825 P.2d 714 (1992)(holding that involvement in prosecuting a CPA claim is insufficient to show injury to business or property).

Mr. Gaekwar alleges in his complaint that he has "harms and losses" sustained but failed to state what the injuries or damages allegedly sustained. When asked in interrogatories about damages sustained, Mr. Gaekwar only mentions the vehicle damage sustained at the time



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

of the motor vehicle accident. Mr. Gaekwar has not alleged any damages as a result of Amica's claims handling.[66] The CPA is not meant to protect against a private citizen's person, but only injury in business or property, and there is no evidence that Plaintiff has sustained such damages. The CPA claim should be dismissed.

## VII. CONCLUSION

For the reasons set forth above, based on the undisputed facts of this case, Plaintiff Gaekwar's claims for bad faith and extracontractual damages must be dismissed as a matter of law because: 1) Amica never denied Mr. Gaekwar's claim, making an IFCA complaint unfounded; 2) Amica acted reasonably in its evaluation of Mr. Gaekwar's claim; and 3) Mr. Gaekwar has no viable Consumer Protection Act claim. Therefore, this Court should grant Amica's motion for partial summary judgment and dismiss Mr. Gaekwar's claims of bad faith and extracontractual claims with prejudice, leaving only the UIM valuation dispute for resolution.

DATED this 10th day of August, 2023.

**WATHEN | LEID | HALL | RIDER P.C.**

*s/ Rory W. Leid*
Rory W. Leid, WSBA #25075

*s/ Lucy B. Wilhelm*
Lucy Blair Wilhelm, WSBA #57130

*s/ Isabella M. Foxen*
Isabella M. Foxen, WSBA #57353
*Attorneys for Defendants*
222 Etruria Street, Seattle, WA 98109
Tel: (206) 622-0494 | Fax: (206) 587-2476
rleid@cwlhlaw.com | lwillhelm@cwlhlaw.com | ifoxen@cwlhlaw.com

[66] *See*, Foxen Decl. **Ex. L**.

## CERTIFICATE OF SERVICE

The undersigned makes the following declaration certified to be true under penalty of perjury pursuant to RCW 9A.72.085:

On the date given below, I hereby certify that I caused the foregoing to be filed using the United States District Court for Western District of Washington – Document Filing System (CM/ECF) and a true and correct copy to be served on the following parties in the manner indicated:

| | |
|---|---|
| David J. Balint, WSBA #05881<br>Attorney for Plaintiff<br>5950 Sixth Avenue South, #200<br>Seattle, WA 98108<br>T : 206 728 7799<br>dbalint@balintlaw.com<br>rettienne@balintlaw.com | **Via E-Service/Email** |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 10th day of August 2023, at Seattle, Washington.

*s/ Brianna Asman*
Brianna Asman, Legal Assistant
basman@cwlhlaw.com



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476