Judge Barbara J. Rothstein
Trial Date: January 8, 2024
*Without Oral Argument*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHANDRASI GAEKWAR, a single individual,

Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY, a foreign corporation,

Defendant.

No. 2:22-cv-1551-BJR

**AMICA'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXTRACONTRACTUAL CLAIMS**

Plaintiff has not shown damages or a denial of benefits to prevent the dismissal of Plaintiff's extracontractual claims. Therefore, dismissal of Plaintiff's extracontractual claims is required as a matter of law.

The following facts are undisputed:

1. Amica promptly reviewed and evaluated all materials Plaintiff submitted in support of his claim.
2. Amica accepted all of Plaintiff's claimed injuries, including an injury to his left knee.
3. Amica accepted all of the medical bills Plaintiff submitted and did not challenge the



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

reasonableness of those charges.

4. Amica obtained an expert medical records review to assist in evaluating the claim.

5. The expert concluded that knee replacement surgery would not be related to the accident.

6. Plaintiff had preexisting degenerative changes in his left knee prior to the accident.

On these facts, Amica's actions have been prompt and reasonable. There is no dispute that Amica's valuation is grounded in Plaintiff's own medical records and an expert opinion. On the undisputed facts above, Amica is entitled to judgment as a matter of law because no reasonable jury could find Amica's claims handling and decisions to be frivolous or unfounded.[1]

## I. The Holding of Perez-Crisantos, a Washington Supreme Court Case, Requires All of Plaintiff's Extracontractual Claims to Be Dismissed as a Matter of Law

In *Perez-Crisantos*, the Washington Supreme Court held that a claim cannot be brought under IFCA based on claims handling, unless there has been an actual denial of coverage or benefits owed. 187 Wn.2d 669, 681. The Court found that both the legislative intent and the canons of statutory construction support the interpretation that the IFCA does not create a cause of action for regulatory violations alone. *Id.* at 681, 683. The Court also looked at the official ballot title, which explicitly stated, "this bill would make it unlawful for insurers to unreasonably deny certain coverage." *Id.* at 681.

*Perez-Crisantos* is a published Washington Supreme Court Case that discusses Washington law. 187 Wn.2d 669 (2017). As such, it is instructive on the interpretation of state

---

[1] In order to establish bad faith, an insured is required to show not only that there was a breach, but that "the breach was unreasonable, frivolous, or unfounded." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). (Quoting *Kirk v. Mt. Airy Ins. Co*., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998)) *See also Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 982 P.2d 1127 (1996) (No bad faith where an insurer has a reasonable basis for claims decision.).



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

law above other Federal District Court opinions that interpret the same law. Plaintiff does not dispute that the holding in *Perez Crisantos v. State Farm* established that regulatory violations alone will not support an IFCA claim. *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 672, 389 P.3d 476 (2017). Plaintiff's brief goes on to allege a failure to conduct a reasonable investigation (WAC284-30-330(4)) as having been the basis for IFCA causes of action in subsequent cases. This again is a regulatory violation and is therefore insufficient to support Plaintiff's extracontractual claims without some type of denial of benefits.

Additionally, other Washington Federal Courts have ruled in accordance with Washington Supreme Court's prohibition on IFCA claims based on value disputes. For example, Western District Court Judge, the Honorable Ricardo S. Martinez, held that there is no IFCA violation when there is a value dispute. Judge Martinez held that the insurer did not unreasonably deny payment of benefits, but instead reasonably disputed the amount, when it refused to tender policy limits on an uninsured motorist claim. *Country Preferred Ins. Co. v. Hurless*, 2012 U.S. Dist. LEXIS 86334, 2012 WL 2367073 (W.D. Wash. June 21, 2012). I

Plaintiff relies on two Federal District Court cases to rebut the holding in *Perez Crisantos.* The first, *Wall v. Country Mut. Ins. Co*. does not discuss the holding of *Perez Crisantos.* 319 F. Supp. 3d 1227, 1229, (2018). The second, *Hopkins v. Integon Gen. Ins. Co*., also does not address the holding in *Perez- Crisantos.* 2020 U.S. Dist. LEXIS 53311, *3, 2020 WL 1467346. The opinions authored by the Honorable Marsha J. Pechman do not address the particular caselaw Amica relies upon in its motion. Because that caselaw is from the highest Court in Washington, interpreting Washington law, the opinions cited by Plaintiff do not refute that a regulatory violation alone cannot support an IFCA claim, particularly where there are no damages supported in the record.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

IFCA provides a cause of action to a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer…" *See* RCW 48.30.015(1). However, as explained by the court in *MK Lim, Inc. v. Greenwich Ins.* Co., 2011 U.S. Dist. LEXIS 126395 (2011) there must be an unreasonable denial of coverage:

> There must be an unreasonable denial of coverage or payment. … As the court in *Lease Crutcher* noted, '[a] violation of WAC 284-30-030 may justify the imposition of treble damages under RCW 48.30.015(2) and/or an award of fees and costs under RCW 48.30.015(3), but an underlying denial of coverage is still required.'…

*See MK Lim, Inc. v. Greenwich Ins.* Co., 2011 U.S. Dist. LEXIS 126395 at 6-7 (2011) (internal citations omitted). In *Lease Crutcher* the Court held that a Plaintiff must allege denial of a claim or benefit, and that violations of the WAC were insufficient. Similarly, in *MK Lim,* the Court held that a delay in payment was not sufficient to establish a denial that would support an IFCA claim. *Id.* Again, Plaintiff has not established a denial of benefits sufficient to support his extracontractual claims where Amica accepted his claim and his injuries and offered to pay Plaintiff to resolve the claim. Where there is no denial, there cannot be an IFCA or CPA claim.

**II. Plaintiff Fails to Show Any Damages Resulting from Amica's Alleged Bad Faith.**

Dissatisfied with Amica's valuation of his UIM claim, Plaintiff filed suit against Amica on October 7, 2022, seeking benefits owed under the insurance contract as well as the extracontractual claims at issue in this motion. Mr. Gaekwar has not sustained any damages related to the alleged extracontractual claims or conduct. Accordingly, summary judgment dismissal of Mr. Gaekwar's bad faith and extracontractual claims is warranted and proper.

To succeed, Plaintiff must show damages related to the extracontractual allegations. "Claims of insurer bad faith 'are analyzed applying the same principles as any other tort: duty,



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

breach of that duty, and damages proximately caused by any breach of duty." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr*., Inc., 161 Wn.2d 903, 916, 169 P.3d 1 (2007) (quoting *Smith v. Safeco Ins. Co*., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003)). Mr. Gaekwar's extracontractual claims require damages to be proximately caused by the action or inaction of Amica. "An insurer is liable for those damages proximately caused by its IFCA violations." *See W. Beach Condo. v. Commonwealth Ins. Co. of Am*., 11 Wn. App. 2d 791, 455 P.3d 1193 (2020) (citing *Dees v. Allstate Ins. Co*., 933 F. Supp. 2d 1299, 1312 (W.D. Wash. 2013).

Damages are a necessary element of all Plaintiff's extracontractual claims. *See Mutual of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 161 Wn.2d 903, 916 (Wash. 2007); *Coventry v. American States Ins. Co.*, 136 Wn.2d 269, 285 (Wash. 1988); *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478,485 (Wash. 2003); *Beasly v. GEICO Gen. Ins. Co.*, 23 Wn. App. 2d 641, 667 (Wash. Ct. App. 2022). Plaintiff has failed to provide even a mere allegation of any damages that he has suffered as a result of Amica's alleged bad faith. In Plaintiff's Initial Disclosure, Plaintiff merely states that he has, "general damages, including emotional distress due to the conduct of defendant and delay in payment of contract benefits."[2]

At the initial disclosure stage, a party is required to base its disclosures "on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(l)(E). As part of the initial disclosure, a party claiming damages must provide the other party a computation of the damages claimed:

> [A] party must, without awaiting a discovery request, provide to the other parties ... a computation of each category of damages claimed by the disclosing party

Fed. R. Civ. P. 26(a)(l)(A)(iii). Further, when asked about non-economic damages, Mr.

[2] *See* Dkt.10 at Pg. 9 of 11.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

Gaekwar feels troubled by his injuries and unable to enjoy the world. He also indicates being upset with Amica.[3] Beyond this, there is no estimation of damages attributable to the alleged insufficient investigation that is purportedly the basis for Plaintiff's extracontractual claims. Plaintiff does not tie his damages to any of the alleged bad faith or regulatory violations, simply indicating upset with Amica choosing to "fight" the claim.[4] The role of a UIM carrier is to step in shoes of the tortfeasor and provide protection where there is too little (or no) protection by the tortfeasor driver's policy. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994); see also Dejbod, 63 Wn. App. at 281-82. Therefore, this upset at Amica's alleged fight is not attributable to any alleged bad faith but is merely what any injured party faces when seeking compensation after an accident.

In *MK Lim,* the Court held that a delay in payment was not sufficient to establish a denial to support an IFCA claim. *See MK Lim, Inc. v. Greenwich Ins.* Co., 2011 U.S. Dist. LEXIS 126395 at 6-7 (2011). This case clearly exemplifies that there must be damages beyond simply awaiting payment to support an IFCA claim in any context. Merely being upset at Amica's valuation of the claim is not sufficient to support extracontractual claims. *MK Lim* was not a UIM case, meaning that the insurer there was not entitled to assert defenses against the insured's claim. Certainly, in the more inherently adversarial context of a UIM claim, the same principle applies – a Plaintiff must show damages from a denial of benefits, a mere delay in payment is not a denial. Here, Mr. Gaekwar's damages claim is unsupported by any testimony or affidavit in his response, and therefore his bad faith, IFCA, and CPA claims cannot succeed.

---

[33] *See* Declaration of Lucy B. Wilhelm in Support of Amica's Reply to PMSJ – Exhibit A - Plaintiff's response to Interrogatory 22 and 28.

[4] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

### III. Mr. Gaekwar Has Not Alleged Injury to His Business or Property to Support His CPA Claim

To maintain an action for a private Consumer Protection Act (CPA) violation, the Plaintiff must prove, among other things, injury to the plaintiff in their business or property and a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Mr. Gaekwar has failed to allege clearly, much less prove, the damages elements which are required to bring a CPA claim.

Claims of inconvenience and expense of prosecuting a CPA claim do not support a claim for injury to business or property in and of themselves. *See e.g., Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc*., 64 Wn. App. 553, 563-64, 825 P.2d 714 (1992). In *Sign-O-Lite Signs. DeLaurenti Florists,* the Court of Appeals held that simply being involved in the defense of an action and prosecution of a CPA claim is insufficient to show injury to business and property. *Id.* at 564. In *Sign-O-Light,* defendant DeLaurenti was defending against a collections action that allegedly was based on a fraudulent contract. *Id.* at 558. Defendant brought a counterclaim for violations of the CPA, alleging damage to her business. *Id.* The Court held that the mere fact of her involvement was insufficient to establish damage to her business or property, however, because defendant was a consultant and had been taken away from her work as a consultant to defend against Sign-O-Light's wrongfully brought collections action, her lost hours were sufficient to show injury to business. *Id.* Plaintiff here has alleged no such damages, instead only claiming damages attributable to the underlying collision.

Mr. Gaekwar has not alleged any injuries he has sustained resulting from Amica's claims handling. "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." *Panag v. Farmers Ins. Co. of Wash.*,



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

166 Wn.2d 27, 57, 204 P.3d 885 (2009). "Thus, damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Id.* Here, interpreting the facts is the light most favorable to Mr. Gaekwar and giving him the benefit of every possible interpretation of his damages claim, he has, at worst, been upset by his claim. Under *Panag,* this cannot support a CPA claim.

Plaintiff asserts that because a violation of the Washington Administrative Code creates a per se violation of the CPA, Plaintiff is excused from proving damages to business or property. There is no legal support for this proposition. Injury is clearly an element of a CPA claim, as evidenced not only in case law but also Washington Pattern Jury instructions, namely WPI 310.01 and WPI 310.06. Under Washington law, pain and suffering are "personal injuries" as opposed to injuries to "business or property." Personal injuries are not compensable damages under the Consumer Protection Act. *Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009); *White River Estates v. Hiltbrunner*, 134 Wn.2d 761, 765 n.1, 953 P.2d 796 (1998); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp*., 122 Wn.2d 299, 318, 858 P.2d 1054 (1993). Plaintiff here has alleged no damages related to alleged violations of the WAC, much less damage to business or property. For this reason, Plaintiff's extracontractual claims, particularly his CPA claim, must fail as a matter of law.

**IV. Plaintiff's Factual Recitation Raises No Issues of Material Fact**

The parties' recitation of the claim handling in this matter are materially similar. There are no disputed facts regarding what actually took place during Amica's handling of the complaint. Despite Plaintiff's characterizing of the various aspects of the claim handling, there is no question that Amica promptly considered the records provided, kept in regular communication with its insured, and solicited the assistance of an expert to determine whether



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

valuing the claim within the tortfeasor's limits was reasonable.[5]

Plaintiff cites no caselaw that requires an insurer to affirmatively seek documents to support an insured's claim. Rather, Plaintiff provides interrogatory responses and indicates that Amica should have known the information therein. Rather than examine Mr. Gaekwar or question him about his damages, Amica chose to accept all of Mr. Gaekwar's injuries, review all records provided by Plaintiff's counsel, and make an offer of compromise after coming to a claim value within the underlying settlement. When that offer was rejected, Amica sought assistance from an expert to determine whether the claim should be valued higher. Amica then made an increased compromised offer to attempt settlement. None of this is disputed.

<u>Amica's Reasonable Investigation of Plaintiff's Claim:</u>

Plaintiff's primary contention in opposition to Amica's motion is that there was not a full and fair investigation of Mr. Gaekwar's claim. Plaintiff acknowledges that the adjusters all testified that they reviewed all documents and letters provided by Plaintiff's counsel. There is no dispute that the adjusters reviewed significant medical records and sought the assistance of an expert in evaluating the claim.

However, Plaintiff asserts that Amica was obligated to go beyond fully and fairly evaluating the claim Mr. Gaekwar presented and asserts that Amica was obligated to seek proof of Mr. Gaekwar's injuries beyond that which Mr. Gaekwar provided via counsel. Plaintiff's proposition that Amica is obligated to prove an insured's claim is unsupported by Washinton law, which acknowledges the special oppositional relationship between and insurer and an insured in a UIM claim. There is no legal authority in Plaintiff's briefing that requires Amica to seek out documents beyond those offered by the claimant in a UIM claim, particularly where counsel indicates they will provide support for the insured's claim.

<u>Amica's Records Review and Expert Evaluation:</u>

Plaintiff alleges that Amica "cherrypicked" language from records and failed to provide sufficient records to the expert Amica retained to do the records review. The examiner reviewed

---

[5] *See* Dkt 31 at Exhibit 11.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

the entirety of Mr. Gaekwar's records from Overlake Medical Center in 2020 as submitted by Plaintiff in his exhibit 8, including the entirety of the records that Plaintiff alleges were "cherrypicked."

Reviewing the narrative in those records as a whole, it is apparent that Mr. Gaekwar's physician recorded his present activity levels in addition to prior health concerns. For example, on February 13, 2020, Dr. Kriseman noted that:

> "I did advise him to stay on physical therapy, continue with stretching and core strengthening. He informs me that he continues to ride bicycle, he typically rides from his home in Sammamish to Woodinville and back again on Sundays. Joint protection discussed. Home stretching exercises discussed as well. He states he does exercise on a regular basis"[6]

On March 26, 2020, Dr. Kriseman also noted:

> "He is getting stronger muscles and therefore greater stability in the left knee as well as the right knee. He did have history of right knee replacement. He is having no physical complaints at this time. His gait is strong and good."[7]

In a separate paragraph, Dr. Kriseman writes of Mr. Gaekwar's historical lung function:

> "Regarding his lungs, he does have a history of moderate asthma without education, he is using inhaler, he has not needed his albuterol and he has not needed any prednisone. He recently went on a hike at altitude and did not need any prednisone at all."[8]

Amica does not dispute that Mr. Gaekwar did a guided hike in the Himalayas at altitude prior to the collision or that he sought Dr. Kriseman's medical clearance for excursion. There are no material issues of fact concerning the records reviewed and Mr. Gaekwar's pre-accident status. Amica's retention and reliance on a medical expert to evaluate the relatedness of Plaintiff's knee surgery was exceedingly reasonable. No jury could find it frivolous or unfounded, therefore Plaintiff's extracontractual claims should be dismissed as a matter of law.

Furthermore, Plaintiff has submitted no expert support for the contention that Amica's records review was in any way inadequate. In *GCG Assocs. LP v. Am. Cas. Co. of Reading Pennsylvania* summary judgment was granted where the insured provided no expert proof that

[6] *See* Dkt 31 at Exhibit 8.

[7] *Id.*

[8] *Id.*



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

the investigation undertaken by the insurer was insufficient. 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008). Similarly, neither of the medical expert reports Plaintiff submitted indicate that the records review Amica conducted was insufficient. There is no factual dispute concerning the records review, therefore Amica is entitled to summary judgment on Plaintiff's extracontractual claims as a matter of law.

## V. Richard Dykstra's Report

In support of his opposition to this motion for summary judgment, Plaintiff presents Mr. Dykstra's expert report. This report purports to outline instances where Amica did not adhere to industry standards in handling Plaintiff's claims. First, industry standards are not at issue in this matter. The inquiry is whether the facts support Mr. Gaekwar's bad faith, IFCA, and CPA claims. Each of these claims requires proof of damages, and Plaintiff has proffered no such proof.

Finally, and most importantly, Mr. Dykstra's opinion does not address whether there was a denial of Mr. Gaekwar's claim or payment of benefits. It is therefore irrelevant to the legal issues before the Court, namely whether there was a denial of benefits that could support Plaintiff's extracontractual claims or whether Plaintiff has proven some damages to support his extracontractual claims. Because it does not address the issues at hand, Mr. Dykstra's report is, at most, a redundant factual recitation of the events in the handling of Plaintiff's UIM claim and should be disregarded.

## VI. Amica's Investigation was Reasonable and Complied with Requirements Under Washington Law

Plaintiff cites *Curtis v. State Farm Mut. Auto. Ins. Co*., as authority limiting the ability of a UIM insurer to stand in the shoes of the tortfeasor to issues of liability only. 2023 U.S. Dist. LEXIS 139856, *1, 2023 WL 5152560. *Curtis,* however, does not purport to change the long-



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

standing law established by the Washington Supreme Court in *Ellwein v. Hartford Accident & Indem. Co*., wherein the Washington Supreme Court held that there is no enhanced duty to an insured in the UIM context, and pulling from a New Mexico Court of Appeals case, endorsed that the duty of good faith means dealing in good faith and fairly as to the terms of the policy, and not overreaching the insured. 142 Wn.2d 766, 781, 15 P.3d 640, 647, (2001). This does not limit the defenses an insurer may assert.

Further, it is imperative to consider the public policy behind UIM insurance when evaluating what a “liability defense” is in the UIM context. **“**UIM insurance provides an excess layer of coverage that is designed to provide full compensation for all amounts that a claimant is legally entitled to where the tortfeasor is underinsured.” *Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 281, 818 P.2d 608 (1991). "Legally entitled to" is the operative phrase, as a UIM insurer "stands in the shoes" of the tortfeasor, and its liability to the insured is **identical** to the underinsured tortfeasor's, up to the UIM policy limits. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994) Emphasis added; *see also Dejbod*, 63 Wn. App. at 281-82. The focus, then, is not on simply allowing liability defenses concerning fault. The insurer is only liable to the extent the tortfeasor would be. Where a tortfeasor would be entitled to challenge the relatedness or reasonableness of certain treatment, the UIM Insurer must be able to do the same to avoid putting the Insured in a better position for having been hit by an uninsured motorist. *Dayton*, 124 Wn.2d at 281. The interpretation of an insurer’s role and obligations in *Dayton* is precedential rather than persuasive, as it is a Washington Supreme Court decision interpreting Washington laws.

Plaintiff also cites to *Beasley v. GEICO Gen. Ins. Co*., for the proposition that an insurer failing to pay the minimum amount evaluated is bad faith, and that IFCA damages can include



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

noneconomic damages. 23 Wn. App. 2d 641, 671, 517 P.3d 500, 519, (2022). *Beasley* is inapposite as Amica offered to make a compromise payment above its valuation of Mr. Gaekwar's claim. Further, where no damages have been asserted, it is irrelevant what type of damages *could* be claimed. Mr. Gaekwar has not tied any damages to the alleged failure to investigate, and therefore his bad faith, CPA, and IFCA complaints must fail.

## VII. CONCLUSION

For the reasons set forth above, based on the undisputed facts of this case, Plaintiff Gaekwar's claims for bad faith and extracontractual damages must be dismissed as a matter of law because:

1) Amica never denied Mr. Gaekwar's claim or benefits, making any IFCA or Bad Faith claim unfounded;
2) Amica acted reasonably in its evaluation of Mr. Gaekwar's claim; and
3) Mr. Gaekwar has presented no evidence of damages attributable to the alleged bad faith.

Therefore, this Court should grant Amica's motion for partial summary judgment and dismiss Mr. Gaekwar's claims of bad faith and extracontractual claims with prejudice, leaving only the UIM valuation dispute for resolution.

DATED this 14th day of September, 2023.



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476

**WATHEN | LEID | HALL | RIDER P.C.**

*s/ Rory W. Leid*
Rory W. Leid, WSBA #25075

*s/ Lucy B. Wilhelm*
Lucy Blair Wilhelm, WSBA #57130

*s/ Isabella M. Foxen*
Isabella M. Foxen, WSBA #57353
*Attorneys for Defendants*
222 Etruria Street, Seattle, WA 98109
Tel: (206) 622-0494 | Fax: (206) 587-2476
rleid@cwlhlaw.com | lwillhelm@cwlhlaw.com | ifoxen@cwlhlaw.com

**CERTIFICATE OF SERVICE**

The undersigned makes the following declaration certified to be true under penalty of perjury pursuant to RCW 9A.72.085:

On the date given below, I hereby certify that I caused the foregoing to be filed using the United States District Court for Western District of Washington – Document Filing System (CM/ECF) and a true and correct copy to be served on the following parties in the manner indicated:

| | |
|---|---|
| David J. Balint, WSBA #05881<br>Attorney for Plaintiff<br>5950 Sixth Avenue South, #200<br>Seattle, WA 98108<br>T : 206 728 7799<br>dbalint@balintlaw.com<br>rettienne@balintlaw.com | **Via E-Service/Email** |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 10th day of August 2023, at Seattle, Washington.

*s/ Brianna Asman*
Brianna Asman, Legal Assistant
basman@cwlhlaw.com



WATHEN | LEID | HALL | RIDER, P.C.
222 ETRURIA STREET
SEATTLE, WASHINGTON 98109-1659
(206) 622-0494/FAX (206) 587-2476